CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

FEB 0 3 2011

JULIA C. DUDLEY, CLERK
BY: /s/ Pau Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DEBORAH J. BERUBE, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 6:10cv004 |
| v. | ) |
| MICHAEL J. ASTRUE, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Deborah J. Berube ("Berube") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). On appeal, Berube contends that the Administrative Law Judge ("ALJ") erred by concluding that she could return to her past relevant work as a data entry person and telemarketer, and she focuses her appeal on a Physical Limitations Assessment completed by Patricia Gilhuly, a treating physician assistant ("PA") at Village Family Physicians, Inc., on October 3, 2008. (Administrative Record, hereinafter "R." at 197-99.) Berube argues that the manipulative limitations found by PA Gilhuly in her assessment, i.e., no reaching in all directions, no handling (gross manipulation), and only occasional fingering (fine manipulation), render her incapable of performing the data entry and telemarketer jobs. The parties disagree as to whether the ALJ had PA Gilhuly's assessment prior to the ALJ's decision denying benefits on October 16, 2008. Regardless, the Gilhuly report was sent to the Appeals Council, which determined that it did not provide a basis for changing the ALJ's decision. The question facing

the court on appeal is whether there is a reasonable possibility that the additional evidence presented by Berube would have changed the outcome of the administrative proceeding. See Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc). After review of the administrative record, the undersigned concludes that there is no reasonable possibility that the Physical Limitations Assessment completed by PA Gilhuly would have changed the outcome of the administrative proceeding. As such, it is **RECOMMENDED** that this case be **AFFIRMED**.

**I**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a

reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education,

---

[1] RFC is a measurement of the most a claimant can do despite his or her limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

3

work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

II

Berube was 38 years old on the date of the ALJ's decision, October 16, 2008. She completed the ninth grade and did not obtain a GED. (R. 25.) Berube's employment history includes working as a cashier in a grocery store, a cashier and assistant manager at a convenience store, a housekeeper at a nursing home, and performing data entry and telemarketing. (R. 26-28, 142.) Berube was training for a data entry position at Express Check Advance in October, 2004, when she stopped working due to emergency kidney surgery. (R. 27.) Berube claims that her ability to work is limited by her kidney, heart, and thyroid problems. She also claims to be limited by blood clots in her lungs, back pain, fatigue, depression, blindness in one eye, and carpal tunnel syndrome in her dominant right hand. (R. 28-36, 131.)

Berube filed an application for DIB and SSI on September 29, 2006, claiming disability as of July 21, 2005 due to her myriad health problems. Berube's application for benefits was rejected by the Commissioner initially based on a medical records review by Dr. Richard Surrusco on December 19, 2006, concerning her physical RFC (R. 506-512), and by Louis Perrott, Ph.D., on December 15, 2006, concerning her mental health. (R. 486-498.) These determinations were confirmed on reconsideration based on a medical records review by Dr. Shirish Shahane on June 7, 2007, concerning her physical RFC (R. 499-505), and by Joseph I. Leizer, Ph.D., on June 7, 2007, concerning her mental health. (R. 556-568.) An administrative

---

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after considering all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

hearing was held on September 22, 2008 before an ALJ, at which hearing Berube was represented by counsel. (R. 20-47.) The ALJ questioned counsel for Berube as to whether her application for benefits should be limited to SSI, as her alleged onset postdated her date last insured, and Berube's counsel readily agreed that it should. (R. 23.)

In a decision issued on October 16, 2008, the ALJ found that Berube had severe impairments consisting of coronary artery disease, pulmonary embolism, residuals of back surgery, prior deep venous thrombosis and loss of sight in right eye since childhood. (R. 12.) Considering these impairments, the ALJ found that Berube retained the RFC to perform the full range of light work, which encompassed her past sedentary work in data entry and telemarketing, provided such work only required one good eye. (R. 15-18.)

### III

Berube argues on appeal that the ALJ's decision is not supported by substantial evidence and should be reversed based on a Physical Limitations Assessment form completed by her treating PA, Patricia Gilhuly, on October 3, 2008. Berube's appeal focuses on the manipulative limitations found by PA Gilhuly in her assessment, i.e., no reaching in all directions, no handling (gross manipulation), and occasional fingering (fine manipulation), which she argues render her incapable of performing the data entry and telemarketer jobs identified by the ALJ.

PA Gilhuly's assessment dates from the period between the administrative hearing, September 22, 2008, and the ALJ's decision, October 16, 2008. There is a question as to whether the ALJ had access to PA Gilhuly's report before he made his decision. At the outset of the administrative hearing, the ALJ noted that counsel for Berube faxed him a report from PA Gilhuly dated August 18, 2008, and the ALJ stated that this report had been received as Exhibit 28F. (R. 22.) While this much is plain from the transcript of the administrative hearing,

there is no August 18, 2008 report from PA Gilhuly in the administrative record and no Exhibit 28F. Although the transcript of the administrative hearing indicates that the ALJ received PA Gilhuly's report, no mention of it is made in the ALJ's decision. Berube's counsel argued at the administrative hearing that her disability stemmed from her combination of impairments, and that there are "a lot of things that are mentioned here by doctor – or Ms. [Gilhuly] in her report. It's just the combination of all of this is making it very difficult for Ms. Berube to sustain any type of full-time work activity." (R. 46.)

While the August 18, 2008 Gilhuly report is nowhere to be found in the administrative record, a second PA Gilhuly report, dated October 3, 2008, is in the record. (R. 197-199.) Berube's counsel contends that this October 3, 2008 report was sent to the Commissioner on October 6, 2008, ten days before the ALJ's decision was issued on October 16, 2008. (R. 195.) Again, the ALJ's decision makes no mention of this report. On November 27, 2009, the Appeals Council entered an Order acknowledging receipt of a letter from Berube's counsel dated February 8, 2009 along with the October 3, 2008 Physical Limitations Assessment by PA Gilhuly. Despite having the October 3, 2008 PA Gilhuly report, the Appeals Council declined review, issuing its standard cursory response that "[w]e found that this information does not provide a basis for changing the Administrative Law Judge's decision." (R. 2.)

The October 3, 2008 PA Gilhuly report is of the checklist variety and contains no narrative discussion of Berube's condition. PA Gilhuly limits Berube to lifting/carrying less than ten pounds, walking and sitting no more than thirty minutes at a time and for a total of two to less than four hours in an eight hour work day. PA Gilhuly concludes that Berube could never climb, balance, crouch, kneel, crawl or push/pull. Nor can she reach in all directions or engage in handling (gross manipulation). PA Gilhuly states that Berube can only occasionally engage in

fingering (fine manipulation). PA Gilhuly concludes that Berube is limited to less than sedentary work. (R. 199.)

In deciding whether to grant review, the Appeals Council must consider evidence submitted with a request for review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc). Evidence is considered to be "new" if it is not duplicative or cumulative. Id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. at 96 (citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985)). Where, as here, the Appeals Council considered the additional evidence submitted to it, but denied review, the Fourth Circuit requires the district court to "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Id. at 96.

The Commissioner argues that the PA Gilhuly report does not meet the Wilkins standard and does not merit reversal or remand for a number of reasons. First, PA Gilhuly, a physician assistant, is not an acceptable medical source whose opinion is entitled to controlling weight. That much is true. 20 C.F.R. §§ 404.1513(a), 404.1527(d), 416.913(a), 416.927(d). However, the regulations also provide that information from sources such as a physician assistant may be used to show the severity of impairments and how such impairments affect the ability to work. 20 C.F.R. §§ 404.1513(d), 416.913(d).

Second, the Commissioner argues that the PA Gilhuly report is a checklist form, and as such, would not have been persuasive to the ALJ. The Commissioner notes, "[t]he better an explanation a source provides for an opinion, the more weight [an ALJ] will give that opinion," 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). The Commissioner also points to a Third Circuit

case, Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993), for the proposition that "form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." The Mason opinion cites other decisions from the Third and Eighth Circuits, which have held that such reports, unaccompanied by thorough written reports, are of suspect reliability. See Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986); Green v. Schweiker, 749 F.2d 1066, 1071, n.3 (3d Cir. 1984); O'Leary v. Schweiker, 710 F.2d 1334, 1341 (8th Cir. 1983).

Third, the Commissioner argues that the form was completed well over a year after Berube had last visited Village Family Physicians, was inconsistent with objective testing showing no weakness in Berube's right hand, and was unsupported by a prior letter written by PA Gilhuly, which failed to list Berube's carpal tunnel or problems with handling or fingering.

The issue framed in Berube's appeal arising from the PA Gilhuly assessment concerns Berube's ability to engage in handling (gross manipulation) and fingering (fine manipulation), such that she could perform jobs involving data entry or telemarketing. In considering whether the PA Gilhuly assessment meets the Wilkins test, it is necessary to review Berube's medical records to ascertain the nature of her complaints and medical treatment associated with fine and gross manipulation of her upper extremities.

The first reference to any issue concerning Berube's arms is in the record of an office visit with Dr. Virginia Blanks at Village Family Physicians on December 19, 2005. Berube complained of numbness in her hands and arms, mostly at night. Dr. Blanks examined Berube and found normal sensation to touch, normal bulk of the thenar eminence (a muscle group associated with the thumb), normal opposition of all of her fingers and normal strength. Dr. Blanks noted positive Tinel's and Phalen's signs, associated with carpal tunnel syndrome, and

Dr. Blanks prescribed carpal tunnel splints. Dr. Blanks' note indicates that Berube is to let her know if "things don't resolve with her hands." (R. 453.)

Berube's medical records make no reference to carpal tunnel issues for nearly a year until November 7, 2006, when Dr. B.K. Ahmad performed nerve conduction and electromyography testing.[2] Dr. Ahmad's Nerve Conduction and Electromyography Report states that the reason for the study was "[p]ain, numbness, burning and tingling in right upper extremity." (R. 517.) Dr. Ahmad's report concluded that "[t]his is an abnormal study indicative of a very mild right median mononeuropathy at the wrist (carpal tunnel syndrome) involving sensory fibers only." (R. 518.)

A few months later, Berube was seen by Dr. Kathryn Humphreys of Village Family Physicians on March 23, 2007, complaining of pain in her left arm, neck and shoulder. She complained of tingling down her arm and numbness in her fingers. X-rays taken at that time showed degenerative disc disease at the C5-C6 level. (R. 527.) Dr. Humphreys referred Berube for a physical therapy evaluation, which was done on March 30, 2007. (R. 520.) Berube was seen again by Dr. Humphreys on April 6, 2007 and an MRI of her cervical spine was taken on April 11, 2007. Dr. Todd Delhi of Village Family Physicians read the MRI on April 17, 2007, and referred Berube to Dr. John C. Fraser, a neurosurgeon.

Dr. Fraser saw Berube on April 23, 2007, and noted in his history that Berube's symptoms began with burning, aching and numbness in the right hand that occurred at night and with use. Dr. Fraser noted that "[t]his was treated as carpal tunnel syndrome with a splint and appears to have improved." (R. 589.) Berube recently developed symptoms on her left side, which Dr. Fraser attributed to a cervical disc problem. Sometime during the next month, Berube

---

[2] On July 22, 2006, Berube was seen in the Bedford Memorial Hospital emergency room with pain in her right ring and little finger, which she said may be attributable to playing with her dog. An x-ray was negative, and she was diagnosed with a contusion. (R. 359-62.)

9

called Dr. Fraser's office to schedule the right carpal tunnel release. Dr. Fraser reported to Berube's primary care physician, Dr. Janice Luth of Village Family Physicians on May 21, 2007, that "I think if she is going to have surgery, it would make sense to deal with the cervical disc and then worry about whether the carpal tunnel warrants surgery." (R. 578.) Dr. Fraser performed the C5-C6 disc surgery on May 30, 2007, and on July 2, 2007, Dr. Fraser wrote Dr. Luth that Berube reported doing well. (R. 573.) On August 20, 2007, Dr. Fraser wrote Dr. Luth again, commenting that Berube's x-rays looked okay, her construct was stable although he did not see complete incorporation of the graft yet. On the issue of carpal tunnel, Dr. Fraser noted no weakness of the right upper extremity, some weakness of the opponens pollicis on the left (hand muscle opposing the thumb) and no weakness of the abductor pollicis brevis (hand muscle that controls some of the movement of the thumb) on either side. He stated that she should continue with isometric exercises and follow up in six months. (R. 572.)

On August 3, 2007, PA Gilhuly wrote a letter stating that Berube had recently lost her Medicaid coverage because her son had turned 18, and recounted her "considerable medical conditions." (R. 571.) Of significance, while this letter details Berube's health problems and lists her medications, it makes no mention of any problems with her hands. The fact that PA Gilhuly did not mention carpal tunnel or any problems with Berube's upper extremities in her letter of August 3, 2007 is not surprising when one considers that PA Gilhuly's name appears on only six pages in Berube's treatment records at Village Family Physicians during 2006 and 2007, none of which mention any medical issue concerning Berube's ability to manipulate her hands and fingers. (R. 447, 448, 449, 450, 451, 525, 526.) In short, there are no medical records in the administrative record that suggest that PA Gilhuly ever had occasion to examine Berube for the purposes of assessing her fine and gross manipulation abilities.

10

Given this medical history, it is difficult to discern any reasonable possibility that PA Gilhuly's assessment could change the outcome of the administrative decision and thus does not warrant remand under Wilkins. 953 F.2d at 96. The PA Gilhuly report is a mere checklist lacking narrative substance to explain the severity of the limitations found. There is nothing in that report to suggest the basis for the level of impairments she finds with regard to Berube's ability to engage in gross and fine manipulation. Nor are there any medical records on which PA Gilhuly's name appears that suggest such limitations. None of the various medical records in Berube's file from 2006 and 2007 that bear PA Gilhuly's name mention any hand problems. Further, the PA Gilhuly assessment comes fourteen months after PA Gilhuly's August 3, 2007 letter and some twenty months after the last time PA Gilhuly's name appears on a treatment note for Berube, on February 27, 2007. (R. 525.) Beyond that, the medical records in the file relating to Berube's carpal tunnel syndrome suggest that it was "very mild," (R. 518), and had improved with the use of a splint. (R. 589.) In short, the record does not contain any evidence to support the level of handling and fingering impairment found by PA Gilhuly. As such, the PA Gilhuly assessment does not call into question the ALJ's determination that Berube could return to her past relevant work in the areas of data entry and telemarketing. On this record, the PA Gilhuly assessment does not provide a sufficient basis upon which to remand this case.

Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, defendant's motion for summary judgment (Dkt. # 13) be **GRANTED**, and plaintiff's Motion for Summary Judgment (Dkt. #12) be **DENIED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note

any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

Entered: February 3, 2011.

/s/ Michael F. Urbanski

Michael F. Urbanski
United States Magistrate Judge